# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALWINDER SINGH,<br><br>        Plaintiff,<br><br>    v.<br><br>IKEA DISTRIBUTION SERVICES, INC.,<br><br>        Defendant. | Case No.: 1:20-cv-0975 NONE JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. 6) |

       Balwinder Singh was employed as a forklift operator for IKEA Distribution Services, Inc., and seeks to hold his former employer liable for violations of California law. Singh had an accident that caused his right finger to be amputated, and asserts that IKEA wrongfully terminated his employment during his disability leave. Singh seeks to hold IKEA liable for discrimination based on disability, retaliation, wrongful termination in violation of public policy, and intentional infliction of emotional distress. (Doc. 1.)

       Defendant seeks dismissal of several causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. IKEA asserts Singh is unable to state a claim for retaliation under the Labor Code, termination in violation of public policy, or intentional infliction of emotional distress. (Doc. 6.) Singh opposes the motion, asserting the facts alleged are sufficient to support his claims and legal theories. (Doc. 12.) For the reasons set forth below, the Court recommends the motion to dismiss be **GRANTED.**

**I.  Background and Plaintiff's Allegations**

Singh began his employment with IKEA in May 2006. (Doc. 1 at 2, ¶ 5.) In 2019, Singh worked as a forklift operator at the IKEA warehouse located in Lebec, California. (*Id.*, ¶¶ 2, 5.) On August 12, 2019, Singh "had an accident that caused his right finger to be amputated." (*Id.*, ¶ 6.) He reports "[t]he amputation created complications and necessitated a second surgery that Plaintiff underwent on October 29, 2019." (*Id.*)

According to Singh, he saw a "physician regularly and his medical leave was continued as needed following his first surgery." (Doc. 1 at 3, ¶ 8.) He alleges a "physician ordered him to stay off work for an additional three months" around November 8, 2019. (*Id.*) Singh reports he "faxed his request for time off to IKEA on November 12, 2019." (*Id.*) He asserts the "physician extended his leave for two additional months" on December 20, 2019, and Singh "personally delivered this request to IKEA." (*Id.*) Singh reports the "physician placed him on temporary disability for approximately six months to allow him to heal" on January 16, 2020, and Singh faxed a "request for time off to IKEA on February 11, 2020." (*Id.*)

On April 9, 2020, IKEA terminated Plaintiff's employment. (Doc. 1 at 3, ¶ 9.) Singh asserts this termination was "in the middle of his disability leave… in discrimination for his disability, and need to take disability leave as special accommodations to heal." (*Id.*) Singh "believes he was fired in retaliation for being disabled with chronic pain, osteoarthritis, and surgical complications, and needing special accommodations." (*Id.*) Singh contends "[b]eing disabled and needing special accommodations were substantial motivating factors in Defendant's reason to terminate." (*Id.*)

Singh "filed charges of disability discrimination and failure to accommodate disability, failure to engage in an interactive dialog, and retaliation for having a disability and needing a disability leave and special accommodations against…IKEA." on July 13, 2020. (Doc. 1 at 4, ¶ 13.) The Department of Fair Housing and Employment noted "an immediate Right to Sue notice was requested," and issued a "Notice of Case Closure/Right-to-Sue Letter." (*Id.*, *see also* Doc. 1-1 at 3.) On July 13, 2020, Singh initiated this action by filing a complaint alleging: (1) discrimination based on disability in violation of Cal. Gov't Code § 12900, (2) retaliation in violation of Cal. Lab. Code § 1102.5, (3) wrongful termination in violation of public policy, and (4) intentional infliction of emotional distress. (Doc. 1.)

Defendant seeks dismissal of the second, third, and fourth causes of action. (Doc. 6) Singh filed his opposition to the motion on September 24, 2020 (Doc. 12), to which IKEA filed a reply on October 8, 2020 (Doc. 13).

## II.     Request for Judicial Notice

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Defendant requests the Court take judicial notice of the legislative history of California Labor Code Sections 1102.5 and 1102.6, including: (1) Senate Bill No. 777, Act of Sept. 22, 2003, ch. 484, § 2, 2003 Cal. Legis. Serv. Ch. 484; (2) Senate Judiciary Committee, Committee Analysis of Senate Bill No. 777 (Apr. 8, 2003); (3) Assembly Committee on Judiciary, Committee Analysis of Senate Bill No. 777 (June 17, 2003); and (4) Senate Bill No. 496, Act of Oct. 12, 2013, ch. 781, § 4, 2013 Cal. Legis. Serv. Ch. 781. (Doc. 7 at 2; Doc. 14 at 2.)

The Court may "take judicial notice of legislative history, including committee reports." *Stone v. Sysco Corp.*, 2016 WL 6582598 at *4 (E.D. Cal. Nov. 7, 2016) (citing *Assoc. des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 n.2 (9th Cir. 2013)); *Korematsu v. United States,* 584 F.Supp. 1406, 1414 (C.D. Cal. 1984) (a court may take judicial notice of legislative facts, such as legislative history, which are "established truths, facts or pronouncements that do not change from case to case but [are applied] universally, while adjudicative facts are those developed in a particular case" (citation omitted)). Because the documents identified are related to the legislative history of California Labor Code Sections 1102.6 and 1102.6 and the accuracy of the Senate Bills and Committee Analyses cannot be questioned, the requests for judicial notice are **GRANTED**.

## III.    Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice*." Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

3

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. Discussion and Analysis

Defendant seeks dismissal of the second, third, and fourth causes of action "on the grounds that the Complaint fails to state a claim upon which relief may be granted… and any amendments made to address the Complaint's deficiencies would be futile." (Doc. 6 at 2.)

4

**A. Second Cause of Action: Retaliation in Violation of Cal. Lab. Code § 1102.5**

Plaintiff seeks to hold IKEA liable for violations of Cal. Lab. Code § 1102.5 (Doc. 1 at 8-12), which is generally referred to as California's "whistleblower" statute. *See Green v. Ralee Engineering Co.,* 19 Cal. 4th 66, 76-77 (1998); *see also Garcia v. Rockwell Int'l Corp.*, 187 Cal.App.3d 1556, 1561 (1986) (explaining "the Labor Code section merely enunciated already existing public policy," which "forbids retaliatory action taken by an employer against an employee who discloses information regarding an employer's violation of law to a government agency"). The purpose of Section 1102.5 is to "encourag[e] workplace 'whistleblowers,' who may without fear of retaliation report concerns regarding an employer's illegal conduct." *Collier v. Superior Court*, 228 Cal. App. 3d 1117, 1123 (1991).

Plaintiff asserts his second cause of action is brought under Section 1102.5(b) and Section 1102.5(c), which provide:

> (b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.
>
> (c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

Cal. Lab. Code § 1102.5. To establish a prima facie case of retaliation under Section 1102.5, "a plaintiff must show that [he] engaged in protected activity, that [he] was thereafter subjected to adverse employment action by [his] ... employer, and there was a causal link between the two." *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 1008 (E.D. Cal. 2016) (quoting *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 287-88 (2006)). The protection of Section 1102.5 "is not extended to general complaints made about the work environment." *Greer v. Lockheed Martin Corp.*, 855 F. Supp. 2d 979, 989 (N.D. Cal. 2012).

///

### 1. Protected activity under Section 1102.5

Defendant argues the claim under Section 1102.5 fails because Singh did not engage in activity protected under this provision. (Doc. 6 at 11-12.) Defendant observes that "complaining about unlawful conduct does not mean that an employee refused to participate in an unlawful activity within the meaning of Subsection (c)." (*Id.* at 12, citing *Robles v. Agreserves, Inc.,* 158 F. Supp. 3d 952, 1008 (E.D. Cal. 2016).) In addition, Defendant contends Singh is unable to state a claim under Section 1102.5(c) that is predicated on the assertion that "because he was a victim of Defendant's alleged unlawful conduct, he necessarily engaged in protected activity under Subsection (c)." (*Id.*, citing, *e.g.*, *Weingand v. Harland Financial Solutions, Inc*., 2012 WL 3537035, *5 (N.D. Cal. Aug. 14, 2012); *Navarro v. DHL Global Forwarding*, 2017 WL 901880, *11, fn.11 (C.D. Cal. Mar. 6, 2017).)

Plaintiff opposes dismissal of the claim under Section 1102.5, asserting he "met his burden by alleging he engaged in protected activity in that he requested special accommodations for his disability of amputated finger and complications." (Doc. 12 at 2.) Singh asserts he "was fired after he requested an extension to his leave and before he could be released to work" and "[i]f the initial leave request was not a legitimate protected activity, Plaintiff's extension request certainly was." (*Id.* at 3.) According to Plaintiff,

> IKEA'S [sic] terminating Plaintiff for taking a disability leave is the same if IKEA had terminated another employee for saying that he has a reasonable belief that IKEA's firing of Plaintiff because he took disability leave violated the law. If the employee who voiced because he had a reasonable belief is covered under 1102.5, so is Plaintiff.

(*Id.* at 4.) Plaintiff contends "taking a disability leave is protected activity under California Labor Code Section 1102.5(c) which prohibits an employer from retaliating against an employee who refuses to engage in conduct that would result in a violation of a statute." (*Id.* at 5.) He asserts that "[w]orking while disabled would violate FEHA," and as such he "refused to engage in violations of state and federal laws or regulations when he chose to take disability leave." (*Id.*)

### 2. Claim under Section 1102.5(b)

A plaintiff engages in protected activity under Section 1102.5(b) when the employee makes a report and has reasonable cause to believe the report discloses a "violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code §

1102.5(a), (b); *see also Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1386 (2005)) (the reporting employee must "reasonably believe []he was disclosing a violation of state or federal law").

In support of his claim under this provision, Singh asserts in the complaint:

> This cause of action is under the Labor Code Section 1102.5(b) which states that an employer shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties. Plaintiff alleges that he was terminated in retaliation for being disabled, requesting and taking the special accommodations of time off work to heal as alleged in Paragraphs 6-11, and the First Cause of Action in violation of California Labor Code Section 1102.5(b). Defendant retaliated against Plaintiff by refusing to give him special accommodations of time off to heal from his anatomic loss and disability and fired him for needing disability accommodations.

(Doc. 1 at 8-9, ¶ 24.)

Plaintiff does not identify any specific statements to his employer that indicated Singh believed IKEA was violating a federal or state statute. Plaintiff alleges only that he submitted requests for leave via fax and personal delivery in November 219, January 2020, and February 2020. (Doc. 1 at 3, ¶ 8.) There are no allegations suggesting Plaintiff believed that these requests would be denied or that he expressed concern to a supervisor—or other individual who would have authority to investigate violations— that a denial by IKEA of his requested leave would be a violation of a rule or regulation. (*See id.*, ¶¶ 8-9.) Indeed, Plaintiff explicitly states he "believes he was fired *in retaliation for being disabled* with chronic pain, osteoarthritis, and surgical complications, and needing special accommodations." (*Id.*, ¶ 9 [emphasis added].)

Because there are no allegations supporting a conclusion that Plaintiff made a report or statement that disclosed "a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation," the facts alleged are insufficient to support a conclusion that Plaintiff engaged in a protected activity under Section 1102.5(b). Accordingly, the Court recommends the motion to dismiss be **GRANTED** to the Second Cause of Action, to the extent it is based upon Section 1102.5(b).

### 3. Claim under Section 1102.5(c)

Plaintiff asserts that disability leave is an activity protected under Section 1102.5(c). (Doc. 12 at 5.) According to Plaintiff, "[w]orking while disabled would violate FEHA," and he "refused to engage in violations of state and federal laws or regulations when he chose to take disability leave." (*Id.*)

As noted, under Section 1102.5(c), protected conduct includes "refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(c); *Robles*, 158 F. Supp. 3d at 1008 (a plaintiff must show "a refusal to engage in unlawful conduct" to state a claim under Section 1102.5(c)). For an employee's refusal to be protected under this provision, "the employer must be on notice that the employee's reason for refusing to participate in the conduct is that the conduct violates a state or federal statute, rule, or regulation." *Ferretti v. Pfizer Inc.*, 2013 WL 140088 at *8 (N.D. Cal. Jan. 10, 2013).

A plaintiff is unable to establish a claim under Section 1102.5(c) when the claim is predicated on an allegation that the plaintiff was a victim of an employer's unlawful labor practices. *See, e.g., Hollie v. Concentra Health Services, Inc.,* 2012 WL 993522 (N.D. Cal. Mar. 23, 2012); *Navarro v. DHL Global Forwarding*, 2017 WL 901880 at *11, n.11 (C.D. Cal. Mar. 6, 2017); *Weingland*, 2012 WL 3537035 at *5 (the language of subsection (c) traditionally applies to employees who take or refuse to take action which facilitates an employer's violation of the law. . . . Plaintiff cites no authority for the rather novel proposition that participation can consist simply of being the victim of an unlawful labor practice"). For example, in *Hollie*, the defendant Concentra had a policy requiring employees to not leave a clinic while patients were waiting. *Id.*, 2012 WL 993522 at *4. The plaintiff argued Concentra "was attempting to get him to engage in conduct that would be a violation of state and federal law" by requiring him to work without pay, "and that § 1102.5(c) therefore applies. *Id.* at *5. The Northern District rejected this argument, observing: "While it is true that it is unlawful under California's labor laws for an *employer* to refuse to pay hourly non-exempt employees for time they have worked, an *employee* who works without pay is not "participat[ing] in" or engaging in, a criminal act, as plaintiff claims." *Id.* (emphasis in original).

The Central District also observed that "[w]here an employee is the victim of an unlawful labor practice, they cannot be said to have "participate[d]" in the practice." *Navarro*, 2017 WL 901880 at *11, n.11. In *Navarro*, the plaintiff asserted that he had diabetes and alleged he would have violated state and federal law by driving with low blood sugar. *Id.*, 2017 WL 901880 at *11. The plaintiff asserted federal and state law "required that he stop driving if and when his diabetes impairs his ability to drive safely." *Id.* Thus, Navarro "argue[d] he could not be fired for temporarily pulling to the side of the road." *Id.* The Central District observed that "[a]t bottom, plaintiff's claim for violation of California Labor Code § 1102.5(c) appears to be analogous to his claim for disability discrimination," and granted summary judgment on the claim. *Id.* at *11-12.

Singh also attempts to base his claim under Section 1102.5(c) on the assertion that he was a victim of IKEA's policies, which he asserts would have required him to return to "work[] while disabled" rather than take leave. Significantly, Plaintiff fails to identify any legal authority for the proposition that if he "work[ed] while disabled," *Plaintiff* would be violating FEHA. Indeed, such an assertion strains logic, as a person could elect to work while suffering from a disability, which places the individual in a protected class. Instead, FEHA regulates the actions of *employers* and prohibits discrimination based an individual's disability or perceived disability. *See* Cal. Gov. Code § 12940(a). Plaintiff is unable to show that "[w]orking while disabled" would result in Singh violating FEHA, or be a protected activity under Section 1102.5(c). *See Navarro*, 2017 WL 901880 at *11, n.11; *Hollie*, 2012 WL 993522 at *4.

The facts alleged are insufficient to support a conclusion that Plaintiff engaged in a protected activity under Section 1102.5(c). Therefore, the Court recommends the motion to dismiss be **GRANTED** to the Second Cause of Action, to the extent it is based upon Section 1102.5(c).

### B. Third Cause of Action: Wrongful Termination in Violation of Public Policy

The authority of an employer to terminate at-will employees is broad, but "can be limited by statute or considerations of public policy." *Ortiz v. Lopez*, 688 F.Supp. 1072, 1078-79 (E.D. Cal. 2010), citing *Tameny v. Atlantic Richfield Co*., 27 Cal.3d 167 (1980). "When an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action against the employer." *Id.*

Plaintiff seeks to hold IKEA liable for "wrongful termination in violation of public policy." (Doc. 1 at 12 [emphasis omitted].) Singh again alleges that "Defendant terminated him in retaliation for being disabled, asserting his right to the special accommodation of taking time off to heal, and needing a medical leave to deal with his serious health condition," in violation of several rules and regulations of California law. (*Id.* at 13, ¶ 34.) Defendant seeks dismissal of the claim to the extent it is based upon violations of Cal. Lab. Code § 1102.5, asserting that "[b]ecause Plaintiff's underlying Section 1102.5 claim is defective, his claim for wrongful termination in violation of public policy must be dismissed to the extent it is predicated on that statute." (Doc. 6 at 18, citing *Esberg v. Union Oil Co.,* 28 Cal. 4th 262, 272–273 (2002); *Arteaga v. Brinks, Inc*., 163 Cal. App. 4th 327, 355 (2008).)

Because Plaintiff fails to allege facts sufficient to support his claim that IKEA violated Section 1102.5, his claim for wrongful termination fails to the extent it is based upon this statute. *See Schulthies v. AMTRAK*, 650 F.Supp.2d 994, 1003 (N.D. Cal. 2009) (dismissing the plaintiff's claim for wrongful termination in violation of public policy based upon Section 1102.5 where the plaintiff failed to allege facts sufficient to support a claim under Section 1102.5). Therefore, the Court recommends the motion to dismiss the Third Cause of Action—to the extent it is based upon a violation of Section 1102.5— be **GRANTED**.

### C. Fourth Cause Action: Intentional Infliction of Emotional Distress

Plaintiff seeks to hold IKEA liable for intentional infliction of emotional distress. (Doc. 1 at 16-18.) To state a cognizable claim for intentional infliction of emotional distress, Plaintiff must allege: (1) outrageous conduct by the defendant, (2) who intended to cause or recklessly disregarded the probability of causing emotional distress, (3) and the defendant's actions were the actual and proximate cause (4) of Plaintiff's severe emotional suffering. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004), citing *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998). Thus, under California law, a claim for intentional infliction of emotional distress requires a plaintiff to identify "outrageous conduct" to that caused the plaintiff emotional distress. *Helgeson v. American Int'l Group,* 44 F.Supp.2d, 1091, 1095 (S.D. Cal. 1999).

Outrageous conduct is demonstrated when a "defendant's conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Van Horn v. Hornbeak*, 2009 WL

10

413725, at *3 (E.D. Cal. Feb. 18, 2009), *quoting Ricard v. Pacific Indemnity Co*., 132 Cal. App. 3d 886, 895 (1982). Plaintiff contends it was "outrageous" to (1) terminate his employment "in discrimination for having the disability" and (2) terminate his employment "in retaliation for needing special accommodations." (Doc. 1 at 17, ¶ 43.)

However, "[m]anaging personnel is not outrageous conduct.... If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996). Thus, "[t]erminating an employee is not alone sufficient to satisfy the standard for extreme and outrageous conduct." *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1177 (N.D. Cal. 2003), citing *Pitman v. City of Oakland*, 197 Cal. App. 3d 1037, 1047, 243 Cal. Rptr. 306 (1988); *see also Metoyer v. Chassman,* 248 Fed. App'x. 832, 835 (9th Cir. 2007) (stating the plaintiff's "allegations that she was improperly terminated [for discriminatory and retaliatory reasons] simply do not make out a claim of intentional infliction of emotional distress"); *Walker v. Boeing Corp.,* 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002) ("Terminating an employee for improper or discriminatory reasons… is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress"). However, a termination may be outrageous if the plaintiff was also "insulted, degraded, yelled at, physically threatened, … publicly humiliated," the target of "racial slurs," or the employment decision was "based on [the plaintiff's] personal life" unrelated to work. *Helgeson v. Am. Int'l Group, Inc.*, 44 F. Supp. 2d 1091, 1096 (C.D. Cal. 1999) (compiling cases).

Plaintiff does not allege any circumstances around his termination such that the Court may find his employer engaged in "outrageous" conduct, and his termination alone—even if improperly motivated by his disability and leave—is not sufficient to support the cause of action. *See Janken,* 46 Cal. App. 4th at 80 (finding the facts insufficient to support a claim for intentional infliction of emotional distress for termination based upon the plaintiff's age, though a violation of FEHA). Thus, the Court recommends the motion to dismiss the Fourth Cause of Action be **GRANTED**.

### V. Leave to Amend

Federal Rules of Civil Procedure Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiff requests that leave to amend be granted. (Doc. 12 at 10.) Due to the sparsity of allegations in the complaint, the Court has insufficient information to conclude that amendment is futile. Plaintiff may be able to allege additional facts that support his claims for violations of Section 1102.5 and intentional infliction of emotional distress. Further, it does not appear that allowing amendment would cause undue delay at this juncture, and there is no evidence Plaintiff has acted in bad faith. Thus, the Court recommends leave to amend be granted as to the Second, Third, and Fourth Causes of Action.

## VI. Findings and Recommendations

Based upon the foregoing, the Court **RECOMMENDS:**

1. Defendant's motion to dismiss (Doc. 6) be **GRANTED**; and
2. Plaintiff be given leave to file a First Amended Complaint within thirty days of any order addressing the motion to dismiss.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///
///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **May 12, 2021**  _____ **/s/ Jennifer L. Thurston**
CHIEF UNITED STATES MAGISTRATE JUDGE